# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL ERBER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 16-CV-131-JHP-FHM |
| THE WILLIAMS COMPANIES, INC., | ) |
| WILLIAMS PARTNERS L.P., WILLIAMS | ) |
| PARTNERS GP LLC, ALAN S. | ) |
| ARMSTRONG and DONALD R. CHAPPEL, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court are the Motion to Dismiss filed by Defendants The Williams Companies, Inc. ("Williams"), Williams Partners L.P. ("WPZ"), Williams Partners GP LLC, Alan S. Armstrong and Donald R. Chappel on October 17, 2016 (Dkt. #66) (the "Motion to Dismiss" or "Mot."); the Brief in Response filed by Lead Plaintiff Employees' Retirement System of the State of Rhode Island ("Plaintiff") on December 2, 2016 (Dkt. #70); and the Reply Brief filed by Defendants on December 21, 2016 (Dkt. #71). For the reasons set forth below, Defendants' Motion to Dismiss is granted, and Plaintiff's Amended Class Action Complaint, filed on August 31, 2016 (Dkt. #61) (the "Complaint" or "Compl."), is dismissed in its entirety and with prejudice.

Plaintiff is a purported unitholder of WPZ, whose common units are securities that trade on the New York Stock Exchange. In its Complaint, Plaintiff alleges that during an analyst day teleconference held on May 13, 2015 (the "Analyst Day") in

connection with the announcement that same day of Williams' proposed acquisition of WPZ (the "WPZ Acquisition"), Armstrong and Chappel (I) made certain affirmative misstatements (*see* Compl. ¶¶ 33, 36, 59, 84-85, 86) and (ii) omitted to disclose certain supposedly material facts (*see id*. ¶¶ 4, 7, 42, 48-49, 75, 87-88), in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Count I asserts that these alleged misstatements and omissions constituted a violation by all Defendants of Section 10(b) of the Exchange Act and Rule 10b-5, which prohibit certain fraudulent statements or omissions of material fact in connection with the purchase or sale of a security. Count II asserts that all Defendants except WPZ are subject to "control person" liability for these alleged misstatements and omissions, pursuant to Section 20(a) of the Exchange Act.

A plaintiff claiming a violation of Section 10(b) of the Exchange Act must allege, in connection with the purchase or sale of a security, that the defendants: (1) made a misrepresentation or omission, (2) of a material fact, (3) with scienter, (4) upon which the plaintiff reasonably relied and (5) which proximately caused the plaintiff's economic loss. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997). Plaintiff's Complaint is subject to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 (the "PSLRA"), which imposes on Plaintiff a heightened pleading burden. *See id.* § 78u-4(b)(1) ("[T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity

all facts on which that belief is formed."); *id.* § 78u-4(b)(2)(A) ("[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."). As a result, "[a] plaintiff alleging securities fraud under Section 10b 'bears a heavy burden at the pleading stage.'" *Weinstein v. McClendon*, 757 F.3d 1110, 1112 (10th Cir. 2014) (quoting *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012)).

**I.      SECTION 10(b) AND RULE 10b-5 (COUNT I)**

Plaintiff's Section 10(b) and Rule 10b-5 claim should be dismissed.

The claim based on affirmative statements should be dismissed because (I) the challenged statements were not false or misleading, (ii) the statements are protected by statutory and common law safe harbors and (iii) Plaintiff has failed to meet the heavy burden under the PSLRA of pleading scienter. Any one of these infirmities alone would be sufficient to require dismissal of Plaintiff's claim based on affirmative statements.

The claim based on alleged omissions should be dismissed because (I) the alleged omissions were immaterial, (ii) Defendants had no duty to disclose them and (iii) Plaintiff has failed to plead scienter. Again, any one of these issues provides an independent basis to dismiss Plaintiff's claim based on alleged omissions.

### A. Affirmative Statements

Plaintiff alleges that Defendants "materially misled the market when [at the Analyst Day] they announced the [WPZ Acquisition] as a 'no risk' proposition that had no chance of not occurring" by stating that "[t]here [was] no risk around the WPZ vote" and by referring to the negotiation and execution of the WPZ Acquisition agreement in the past tense. (Compl. ¶¶ 33, 36, 59, 84-85, 86.) This allegation fails to state a claim under Section 10(b) and Rule 10b-5 because (I) the affirmative statements that Plaintiff challenges were not false or misleading; and (ii) those statements are protected from liability under the "safe harbor" for forward-looking statements set out in the PSLRA, and under the Tenth Circuit's "bespeaks caution" doctrine.

The challenged affirmative statements were not false or misleading. The transcript of the Analyst Day conference, as filed with the Securities and Exchange Commission (the "SEC"), demonstrates that Defendants did not state or suggest that the WPZ Acquisition had no consummation risk, and no reasonable investor would have interpreted Defendants' statements to say that it did. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 810 (2d Cir. 1996). The transcript shows that after laying out a multi-step process for consummation, Defendants identified just one of those steps as risk-free—the "outcome" of the WPZ unitholder vote. (Compl. ¶ 36.) Indeed, Defendants disclosed, in a filing made with the SEC earlier the same day, that six other conditions had to be met in order for the WPZ Acquisition to close. (Mot. Ex. B (Dkt. #66-2) at 2.) Defendants also never stated or suggested that a WPZ unitholder vote would necessarily occur. In fact, the challenged statements had nothing to do with whether the unitholder vote would be scheduled; they had only to do

4

with the outcome, in the event a vote happened. (*See* Mot. Ex. D (Dkt. #66-4) at 6.)[1] Plaintiff does not dispute the accuracy of Defendants' statements concerning the outcome of the WPZ unitholder vote, should such vote have occurred. Furthermore, Defendants' use of the past tense, when referring to the negotiation and execution of the acquisition agreement between Williams and WPZ, was not false or misleading. At the time of the Analyst Day, the agreement had, in fact, "just got done." (Compl. ¶ 85.)

The challenged statements are also inactionable under the safe harbor of the PSLRA and the Tenth Circuit's "bespeaks caution" doctrine, because the challenged statements were forward-looking statements (identified as such) that were accompanied by meaningful cautionary language. *See* 15 U.S.C. § 78u-5(c)(1); *Grossman*, 120 F.3d at 1120-23. They were forward-looking because they were about the likelihood of future events relating to the consummation of the WPZ Acquisition. They were also accompanied by language that expressly identified them as forward-looking. (Mot. Ex. C (Dkt. #66-3) at 5; Mot. Ex. D (Dkt. #66-4) at 10-11; Mot. Ex. E (Dkt. #66-5) at 2.) The statements were also accompanied by meaningful cautionary language, including language that "[f]orward-looking statements" of the kind Plaintiff challenges (concerning, for example, "completion of the Proposed Merger" with WPZ) "are based on numerous assumptions, uncertainties and risks that could cause future events or results to be materially different from those stated or implied in this presentation" and that, "[g]iven the uncertainties and risk factors that could cause our actual results to differ materially from those contained in any forward-looking statement, we caution investors

---

[1] As is permitted on a motion to dismiss in a securities case, the Court has considered "documents incorporated by reference into the [C]omplaint, public documents filed with the SEC, and documents . . . [P]laintiff[] relied upon in bringing suit." *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013).

5

not to unduly rely on our forward-looking statements." (*See* Mot. Ex. C (Dkt. #66-3) at 5-7; Mot. Ex. D (Dkt. #66-4) at 11-12; Mot. Ex. E (Dkt. #66-5) at 2-3.)  As a result, Defendants are protected from liability for the challenged affirmative statements under both the PSLRA safe harbor, *see Bumgarner v. Williams Cos.*, No. 16-CV-26-GKF-FHM, 2016 WL 1717206, at *4 (N.D. Okla. Apr. 28, 2016); *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1296-98 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015), and the Tenth Circuit's "bespeaks caution" doctrine, *see Grossman*, 120 F.3d at 1120-23.[2]

### B.    Alleged Omissions

Plaintiff alleges that Defendants omitted to disclose allegedly material facts when they remained silent at the Analyst Day about certain preliminary overtures concerning a potential acquisition of Williams that Energy Transfer Equity, L.P. ("ETE") had previously made, and that Williams had previously rebuffed.  (Compl. ¶¶ 84-88.)  This allegation fails to state a claim under Section 10(b) and Rule 10b-5 because (I) ETE's overtures before the Analyst Day concerning a potential merger with Williams were immaterial; and (ii) Defendants had no duty to disclose those overtures, even if they were material.

Mere overtures, general inquiries, unilateral offers to negotiate and indications of interest—the types of contact by ETE alleged here—are immaterial as a matter of law. *See, e.g.*, *Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 242 (4th Cir. 1988).

---

[2] Plaintiff's argument that the PSLRA safe harbor does not apply because Plaintiff has pleaded scienter must be rejected.  Not only has Plaintiff failed to plead scienter, but this Court and others have repeatedly rejected that reading of the statute.  *See Bumgarner*, 2016 WL 1717206, at *3 ("[A] forward-looking statement identified as such and accompanied by meaningful cautionary statements qualifies for the protection of the safe harbor regardless of the state of mind of the individual making or approving the statement." (collecting cases)).

Williams did not receive an actual offer from ETE until nearly one week after the May 13, 2015 Analyst Day (Compl. ¶¶ 9, 42, 48, 49, 59, 63), and Plaintiff has failed to allege any facts suggesting that before the Analyst Day, ETE did anything other than put out routine and "tentative feelers" concerning the possibility of a merger with Williams, or that Williams did anything other than express a lack of interest in engaging with ETE.[3]

> Any reasonably sophisticated investor in securities buying shares in a large corporation would expect that . . . other corporations might express an interest in buying, or that the large corporation's directors might discuss what it should do if it obtains such offers. For large corporations to make public announcements every time directors discuss any such matter in terms as vague as those presented in this evidence or receive 'tentative feelers' of the general sort revealed by this evidence . . . would more likely confuse, than inform, the marketplace.

*Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411, 415 (1st Cir. 1989). Plaintiff's reliance on the fact that Williams ultimately (in September 2015—more than four months after the Analyst Day) entered into a merger agreement with ETE is unavailing; the Tenth Circuit has repeatedly rejected efforts to plead "fraud by hindsight." *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1247 (10th Cir. 2016); *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001).

Even if ETE's early overtures were material, Plaintiff has failed to allege facts sufficient to establish that Defendants had any duty to disclose them, or that Defendants had any duty to update their disclosures about the WPZ Acquisition on May 19,

---

[3] Plaintiff does not allege that at the time of the Analyst Day, the parties had exchanged any confidential information, negotiated any price or other deal terms, adopted any board resolutions to sell the company or given any instructions to effect a sale. In fact, an SEC filing relied upon by Plaintiff and thereby incorporated by reference into the Complaint makes clear that Williams repeatedly advised ETE in 2014 and the first half of 2015 that Williams was not interested in a deal. (Mot. Ex. A (Dkt. #66-1) at 81-83); *see* Compl. at 1 & ¶¶ 42-51; *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1246 (D. Utah 1999).

7

2015—when ETE made its first written offer. "[A] duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information," *Chiarella v. United States*, 445 U.S. 222, 235 (1980), and "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5," *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). Furthermore, the Tenth Circuit has not recognized a "duty to update," and other courts have refused to do so. *See, e.g.*, *Gallagher v. Abbott Labs.*, 269 F.3d 806, 810 (7th Cir. 2001).

### C.    Scienter

Both parts of Plaintiff's Section 10(b) and Rule 10b-5 claim—based both on affirmative statements and alleged omissions—must be dismissed for the further, independent reason that Plaintiff has failed to allege facts giving rise to the "strong inference" of scienter required under the PSLRA. 15 U.S.C. § 78u-4(b)(2); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) ("[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling.").

Plaintiff has failed to allege any facts suggesting that Defendants acted either "intentionally" or in "an extreme departure from standards of ordinary care"—the standard Plaintiff must plead, *see Fleming*, 264 F.3d at 1260—when Defendants discussed the WPZ Acquisition at the Analyst Day or when they kept the informal overtures from ETE confidential. According to Plaintiff, because Defendants knew at the time they entered into the WPZ Acquisition of the overtures from ETE, they must have known that it was likely that Williams would enter into a merger with ETE and that that merger would require termination of the WPZ Acquisition. But Plaintiff never explains why Defendants would have entered into the WPZ Acquisition had they thought it would

8

be terminated.  And Plaintiff never explains how Defendants knew as of May 2015 that ETE would make (and that Williams would agree to) an offer contingent on termination of the WPZ Acquisition when, months later in September 2015, the Williams board of directors (the "Board") approved the merger with ETE by a narrow, 8 to 5 margin.

Nor does Plaintiff allege any motive by Defendants to defraud WPZ's unitholders.  *See id.* at 1262 ("Allegations of motive and opportunity" may be part of "th[e] totality [of the scienter analysis].").  The more "cogent and compelling" inference is not that Defendants acted with the requisite scienter, but that Defendants saw no need to disclose ETE's interest when ETE's interest was informal and one-sided, and did disclose ETE's interest as soon as the Board decided on June 21, 2015 to explore merger opportunities following ETE's first formal offer.

Plaintiff has therefore failed to state a claim under Section 10(b) and Rule 10b-5.

## II.        SECTION 20(a) (COUNT II)

Because Plaintiff has failed to state a claim for a primary violation under Section 10(b) of the Exchange Act, its claim for "control person" liability under Section 20(a) must also be dismissed.  *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998).

9

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. #66) is hereby GRANTED, Plaintiff's Complaint (Dkt. #61) is hereby DISMISSED in its entirety and with prejudice.[4]

**IT IS SO ORDERED this 8th day of March, 2017.**

_____
James H. Payne
United States District Judge
Northern District of Oklahoma

---

[4] Following its appointment as lead plaintiff on June 22, 2016, Plaintiff had the opportunity to amend the complaint, which it did. Plaintiff has not made a motion for leave to amend, and has presented no facts suggesting that further amendment could resolve the problems with its pleadings. In these circumstances, dismissal with prejudice is appropriate. *See Gold*, 776 F.3d at 1118.